UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL UNION 2150,

        Plaintiff,

     v.                                  Case No. 13-C-0724

NEXTERA ENERGY POINT BEACH LLC,

        Defendant.

DECISION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (DOC. 28) AND GRANTING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (DOC. 29)

The International Brotherhood of Electrical Workers Local 2150 ("IBEW") brought this action against NextEra Energy Point Beach, LLC claiming that NextEra improperly refused to submit to arbitration a grievance IBEW filed on behalf of two NextEra employees. NextEra maintains that the grievance, relating to access to its nuclear energy facility, is outside the scope of the parties' collective bargaining agreement, and that it is not required to address the grievance through arbitration.

The parties filed cross-motions for summary judgment prior to a Seventh Circuit decision in a closely related case involving the same parties, the same issues, and similar facts. *See Int'l Bhd. of Elec. Workers Local 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592 (7th Cir. 2014). After that case was decided in favor of IBEW, the court denied the prior motions and directed the parties to file new motions in light of the new decision.

FACTS

IBEW is a labor organization that represents certain employees of NextEra for purposes of collective bargaining. IBEW maintains offices in Menomonee Falls, Wisconsin,

within this judicial district. NextEra owns and operates the Point Beach Nuclear Power Plant, a two-unit commercial nuclear energy generating facility in Two Rivers, Wisconsin, within this judicial district. NextEra is an employer within an industry affecting commerce as defined in the Labor-Management Relations Act, 29 U.S.C. §151 *et seq*.

In September 2007, NextEra acquired the Point Beach facility from Wisconsin Electric Power Company ("WE Energies") and as successor to WE Energies assumed the collective bargaining agreements between IBEW and WE Energies. IBEW represents four bargaining units at the Point Beach facility, each of which is covered by a separate collective bargaining agreement. The "Blue Book" is the collective bargaining agreement between NextEra and IBEW that has applied to the bargaining unit that established the terms and conditions of employment applicable to the employees at issue in this case, Michael Walker and Clyde Engelbrecht. In 2004, IBEW and WE Energies had entered the agreement constituting the "2004-2007 Blue Book." NextEra assumed the 2004-2007 Blue Book when it acquired Point Beach from WE Energies.

Article XVII of the 2004-2007 Blue Book contained a multi-step dispute resolution procedure by which the parties addressed grievances. The procedure provided for final and binding arbitration of a dispute "not satisfactorily resolved as described in [the Grievance Procedure] and [involving] compliance with the terms and conditions of this Agreement."

In 2006, IBEW and WE Energies submitted to arbitration a dispute concerning an employee whose unescorted access[1] had been revoked by WE Energies and who was

---

[1] "Unescorted access" is a security clearance level applicable to personnel working at commercial nuclear generating facilities in the United States. The United States Nuclear Regulatory Commission's regulations and NextEra's policy regarding unescorted access to its nuclear plants are described in detail below.

2

consequently terminated. Arbitrator Suntrup defined the issue submitted for resolution as whether WE Energies' decision to revoke the grievant's unescorted access-to-work status was substantively arbitrable under the parties' agreement. Arbitrator Suntrup analyzed the language of the 2004-2007 Blue Book, and in so doing reproduced and relied on the text of the following sections of Article XVII-Grievance Procedure: section 17.1(1)(A) (Step 1), section 17.1(3)(A), (B) (Step 3), and section 17.1(4) (Step 4). Arbitrator Suntrup also reproduced and relied on the text of Article XVIII-Method of Arbitration, Sections 18.1, 18.1(2) and 18.1(3). Arbitrator Suntrup determined (in the "2006 Suntrup Award") that the issue of revocation of unescorted access at Point Beach was not arbitrable under the parties' agreement and, as a result, that he had no jurisdiction over the issue of the loss of unescorted access.

Following expiration of the 2004-2007 Blue Book, IBEW and NextEra negotiated and entered three successor collective bargaining agreements, the most recent of which is effective for the period of 2013-2016. At no time during negotiations over the terms of the three successor Blue Book collective bargaining agreements following issuance of the 2006 Suntrup Award did IBEW propose any terms to provide that unescorted-access decisions be subject to arbitration or propose terms or changes from the 2004-2007 Blue Book to address, rescind, or modify the effect of the 2006 Suntrup Award.

The collective bargaining agreement at issue in this lawsuit is the Blue Book that was in effect from August 16, 2010, to September 15, 2013 (the "2010-2013 Blue Book"). Steps 1, 3, and 4 of Article 17—Grievance Procedure contained in the 2010-2013 Blue Book were identical to the provisions of the 2004-2007 Blue Book that Arbitrator Suntrup reproduced and relied upon. Similarly, sections 18.1, 18.1(2) and 18.1(3) of Article 18—Method of

3

Arbitration in the 2010-2013 Blue Book were materially identical[2] to the same provisions in the 2004-2007 Blue Book that Arbitrator Suntrup reproduced and relied upon.

Article 8—Management Rights of the 2010-2013 Blue Book stated:

The right to employ, layoff, release, re-employ, promote, demote, transfer, discipline, and discharge are reserved by and shall be vested exclusively in the Company, except as modified by the terms of this Agreement. The management of the property and corporate affairs are reserved by and shall be vested exclusively in the Company. The Company shall have the right to determine who it shall employ, how many persons it will employ or retain, the work they shall perform and the manner in which they shall do their work, the way they shall deport themselves while on the Company's property, the character of organization required for the most effective performance of the work, together with the right to exercise full control and discipline in the interest of good service and the proper conduct of its business.

Article 11—Discipline of the 2010-2013 Blue Book stated:

In the matter of discipline including discharge, charges brought against an employee shall be specific and shall promptly be called to the employee's attention. The Company may, as it deems appropriate and without prejudice to the rights of any involved party, temporarily suspend an employee pending completion of its investigation into a disciplinary matter. If upon completion of the investigation the charges are not sustained, the employee shall have his/her record cleared of such charges and, in the case of loss of wage because of temporary suspension, shall receive reimbursement for such loss. Discipline involving disciplinary layoff or discharge shall not be administered until the employee has been given an opportunity of presenting his/her case at a review meeting, at which the Company will disclose its findings of the investigation to date. Such review meeting must involve the appropriate official of the Company and a representative designated by the L.U. 2150 office before a discharge or disciplinary layoff is administered. An employee's seniority rights shall not be permanently impaired because of disciplinary layoff. In those matters of discipline in which a formal record of the disciplinary action is prepared for placement in the disciplined employee's personnel file, a copy of such formal record shall be given to the disciplined employee, the steward, the Unit Chairperson, and the Union office.

---

[2] Any difference between the Method of Arbitration provision in the 2010-2013 Blue Book and the 2004-2007 provision quoted by Arbitrator Suntrup is immaterial. For example, Arbitrator Suntrup quotes (emphasis added) Article XVIII-Method of Arbitration as stating "if the matter in dispute is *arbitrable* under the terms of this agreement," whereas the 2010-2013 Blue Book states "if the matter in dispute is *subject to arbitration* under the terms of this Agreement."

4

Members of the Union are not to be reprimanded within hearing of others.

The 2010-2013 Blue Book contained a four-step procedure for filing a grievance, outlined in Article 17 of the agreement, as well as procedures for seeking and proceeding with arbitration, outlined in Articles 17 and 18. Article 17—Grievance Procedure provided, in relevant part:

Step 1

> A. In order to foster the most harmonious relationships between employees and their supervisors, it is mutually agreed that potential grievances and other employee problems relating to the employee's job performance, assignment of work, overtime, or other matters which may arise from day to day shall be promptly discussed between the employees involved and their immediate supervisors, with or without a Union representative present. It shall be the supervisor's responsibility to promptly schedule any meeting necessary to discuss such potential grievances and problems employees may bring to their attention.
>
> B. If the matter is not satisfactorily resolved as described in Item A above and is to be processed as a grievance, the employee involved and the steward shall . . . prepare a written grievance . . . [that] . . . should provide specific facts about the problem and stipulate the provision (if any) of the Labor Agreement alleged to have been violated.
>
> C. The steward will inform the person to whom the supervisor reports of the Union's intent to pursue the grievance. This person will promptly hold a meeting to hear the grievance and, following an investigation, will issue a written decision to the Union on the matter in question.

Step 2

> If the matter is not satisfactorily resolved as described in Step 1 above, the Union may . . . appeal the unresolved grievance to the next appropriate level of management.

Step 3

> Grievance matters involving discipline, discharge, promotion, and demotion which are not satisfactorily resolved in Step 2 may be

5

appealed by the Union . . . to the officer-in-charge (or designated representative).

Step 4

If the matter is not satisfactorily resolved as described in Step 3 above and it involves compliance with the terms and conditions of this Agreement, the Union may . . . submit the dispute to an arbitrator, to be selected in the manner specified hereinafter, and the Company and the Union agree that the decision of such arbitrator shall be binding on both parties.

Article 18 of the 2010-2013 Blue Book contained the following terms governing arbitration:

If the Union desires to arbitrate any matter in dispute pursuant to Section 17.1(4) above, if the matter in dispute is subject to arbitration under the terms of this Agreement . . . arbitration shall proceed as follows:

. . . .

2.  It is understood that the function of the arbitrator shall be to decide, by interpreting and applying this Agreement, the matter or matters specifically set before it and that the arbitrator shall have no power to extend the duration of the Agreement; to add terms or provisions thereto; . . . nor to enlarge its own jurisdiction except upon mutual consent of the Company and the Union.

3.  . . . the decisions of the arbitrator concerning any mater referred to it pursuant to the provisions hereof shall (if not contrary to state or federal law or regulations thereunder) be final and conclusive upon the employees, the Union, and the Company.

The 2010-2013 Blue Book does not contain any terms or language addressing whether an arbitrator or court is authorized to determine issues of arbitrability.

Nuclear Regulatory Commission regulations concerning unescorted access are contained in 10 C.F.R. pt. 26 and 10 C.F.R. pt. 73. NextEra created and maintains an "Access Authorization and Fitness for Duty Program" (the "Access and Fitness Program"). The Access and Fitness Program includes a criminal background investigation, psychological assessment, drug and alcohol screening including random testing, and

6

behavioral observation of those individuals seeking unescorted access. These requirements apply not only to NextEra's initial decision to grant unescorted access but also continually to those individuals already holding unescorted access clearance. Accordingly, NextEra assesses whether those persons currently holding unauthorized access privileges continue to be "trustworthy and reliable, such that they do not constitute an unreasonable risk to public health and safety."

At no point during development of its Access and Fitness Program did NextEra receive input from or consult with IBEW. Further, IBEW is not consulted at any point regarding the merits of NextEra's assessment of whether an individual meets or continues to meet the standard for unescorted access; IBEW plays no role in determining whether an individual qualifies for unescorted access.

NextEra provides a review procedure whereby individuals whose unescorted access is denied or revoked can obtain an impartial and independent internal management review of that decision. An individual whose access to Point Beach is revoked or denied is provided written notice of the right to appeal such a decision to an independent management panel. The affected individual is afforded the right to be represented by counsel and to submit any materials or arguments he or she chooses, and the review panel undertakes a de novo review of the decision.

NextEra maintains its Access and Fitness Program as an independent policy and document. Unescorted access decisions are made pursuant to the standards and procedures established for the Access and Fitness Program, without reliance on other company documents.

7

There are no specific references to NextEra's Access and Fitness Program in the 2010-2013 Blue Book. The lone references to unescorted access in the 2010-2013 Blue Book provide that "[w]ith respect to the nature of site access-related psychological interviews, employees in this bargaining unit will be treated no less favorably than employees of other PBNP bargaining units and/or Critical Groups," and "[t]he Company agrees to review any information provided by the Union regarding denial of access, so long as any such information is provided within the normal appeals process timeline and does not delay the appeals process." All employees at Point Beach must have and maintain unescorted access authorization.

Michael Walker and Clyde Engelbrecht were full-time employees of NextEra from May 24, 2010, until February 7, 2013. Both had unescorted-access authorization to Point Beach as a requirement of their employment. Walker and Mr. Engelbrecht are members of IBEW and, at the time of their termination, were employed in the bargaining unit covered by the 2010-2013 Blue Book.

Taking the evidence in NextEra's favor, Walker and Engelbrecht were denied nuclear access because they gained unauthorized access to a restricted security locker containing weapons and ammunition, which was stationed inside the nuclear power plant for the sole use of the NextEra plant security force, and they failed to notify supervision or security of this incident. On the other hand, taking the evidence in IBEW's favor, Walker and Engelbrecht were denied nuclear access because both were present when a restricted security locker containing weapons and ammunition, stationed inside the nuclear power plant for the sole use of the NextEra plant security force, was unlocked, and neither made supervision or security aware of this incident until a later date.

8

NextEra deemed Walker and Engelbrecht no longer trustworthy and reliable, and therefore revoked their unescorted access effective February 7, 2013. On February 15, 2013, Walker appealed NextEra's decision to revoke his unescorted access. Engelbrecht likewise appealed on February 18, 2013. During their appeals, Walker and Engelbrecht were represented by counsel.

Walker's and Engelbrecht's appeals were considered and heard by an appeal panel, no member of which was involved in the initial decision to revoke their access. The appeal panel conducted an independent review of the facts and considered all the information submitted by Walker's and Engelbrecht's counsel. On February 28, 2013, the appeal panel affirmed NextEra's decision to revoke Walker's and Engelbrecht's unescorted access.

On March 5, 2013, IBEW filed written grievances on behalf of Walker and Engelbrecht, alleging they were "[d]ischarged from employment due to an inappropriate site access denial determination without due process or just cause," referencing Articles 7 and 11 of the 2010-2013 Blue Book. IBEW's requested remedy was that Walker and Engelbrecht receive "[r]einstatement of site access, reinstatement of employment and to be made whole."

In letters dated March 11, 2013, NextEra responded in writing to IBEW's grievances:

> The Company and the Union have previously arbitrated whether access denial is substantively arbitrable under the contract and an arbitrator has decided that it is not (See Suntrup Decision – FMCS Case No. 05/54861). Per Article 17, Section 17.1(4) ". . . the Company and the Union agree that the decision of such arbitrator shall be binding on both parties."
>
> As an arbitrator has decided this matter is not subject to the grievance and arbitration procedures, the Company denies the grievance.

On April 3, 2013, IBEW contacted NextEra by e-mail, stating:

9

> We intend to continue to pursue these grievances. Rather than following a path similar to the one followed in Jon Hofstra's grievance, we suggest placing both grievances in abeyance pending the resolution of the court case to compel arbitration in Jon Hofstra's grievance. Please let me know whether or not you agree. Thanks.

On April 10, 2013, NextEra responded:

> As the company has previously stated, the subject matter of the grievances the union is purporting to take up on behalf of Engelbrecht and Walker are not subject to the arbitration provisions of the collective bargaining agreement currently in effect between the company and IBEW Local 2150. Moreover, the issue of arbitrability of the company's nuclear access decisions was already decided in the Suntrup Case wherein the arbitrator held that such decisions were not arbitrable.
>
> The company cannot advise the union on how to proceed but cannot agree to hold the instant grievances in abeyance.

On April 10, 2013, IBEW wrote via e-mail: "Please verify that you understand that we are requesting arbitration for the termination grievances for both Engelbrecht and Walker and that you are refusing to participate in arbitration. Thanks." On April 18, 2013, NextEra responded as follows:

> Article 18.1 of the CBA states in pertinent part, " . . . the decisions of the arbitrator concerning any matter referred to it pursuant to the provisions hereof shall (if not contrary to state or federal law or regulations there under) be final and conclusive upon the employees, the Union and the Company."
>
> The parties negotiated this provision to avoid the need to constantly rehash disputes about the meaning of contract terms.
>
> The denial of access for Walker and Engelbrecht was not punitive, but made in conjunction with the Company's obligations as a nuclear licensee. In 2006, Arbitrator Suntrup was asked by the parties to interpret the CBA to determine if the provisions demonstrate an agreement between the parties to arbitrate access decisions. Arbitrator Suntrup determined that there was no such agreement and that nuclear access decisions are NOT arbitrable under the terms of the contract. Since 2006, the Union has had several opportunities to bargain new contract language on this matter but has failed to do so. Neither has the Union taken steps to establish that Arbitrator Suntrup's decisions violated either state or federal law. Accordingly, that decision, is final and

10

binding and governs the relationship between the parties on that issue until such time as the parties bargain something new.

The Union's current attempt to move these matters to arbitration in the face of the Suntrup decision is a violation of Article 18.1 which contemplates that both the Company and the Union will abide by arbitration awards. The Company therefore refuses to arbitrate these matters and will take all reasonable steps to ensure that the Suntrup award is honored.

NextEra held that the issues regarding Walker's and Engelbrecht's loss of unescorted site access and termination were not arbitrable under the terms of the Blue Book, and refused to participate.

In August 2014, the Seventh Circuit released its opinion in *International Brotherhood of Electrical Workers Local 2150 v. NextEra Energy Point Beach, LLC*, involving the same parties and similar facts. 762 F.3d 592 (7th Cir. 2014). The Seventh Circuit ruled that under a different IBEW unit's collective bargaining agreement with NextEra (known as the "White Book") a termination-based grievance stemming from a loss of unescorted access privileges by employee Jonathan Hofstra was arbitrable.

## ANALYSIS

Arbitration "is a matter of contract and a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit." *Int'l Union of Operating Eng's, Local Union 103 v. Ind. Constr. Corp.*, 13 F.3d 253, 256 (7th Cir. 1994) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353 (1960)). However, requests to submit a particular grievance to arbitration are only to be denied if it may be said with "positive assurance" that a collective bargaining agreement's arbitration clause is not susceptible to an interpretation that covers the

11

grievance at hand. *Warrior & Gulf Navigation*, 363 U.S. at 582-83. Thus, the burden to show that a particular dispute is not subject to arbitration is on the party opposing arbitration.

In determining whether there is "positive assurance" that a collective bargaining agreement's arbitration clause does not cover a particular dispute, courts look at the agreement and all relevant evidence surrounding the agreement's formation. *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649, 106 S. Ct. 1415, 1419 (1986); *Indiana Constr. Corp.*, 13 F.3d at 256. This evidence must be "forceful" to overcome the presumption of arbitrability in collective bargaining agreements, one that is strongest when the arbitration clause at issue is written broadly. *NextEra*, 762 F.3d at 594; *Ind. Constr. Corp.*, 13 F.3d at 256. Furthermore, the party opposing arbitration must demonstrate with specificity that a particular topic is excluded from arbitration through the language of the collective bargaining agreement. *Int'l Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Grp.*, 999 F.2d 227, 231 (7th Cir. 1993). Any ambiguity as to the agreement's scope will be construed in favor of arbitration. *NextEra*, 762 F.3d at 594. When it comes to management's right to retain control over certain decisions, "nonarbitrability requires an absolutely undeniable reservation of unfettered managerial authority." *Logistics Support*, 999 F.2d at 231.

In this instance, the language of the 2010-2013 Blue Book was broad enough to trigger a presumption of arbitrability. *See Ind. Constr. Corp*, 13 F.3d at 257. Article 17, § 17.1(1)(A) (emphasis added) listed "the employee's job performance, assignment of work, overtime, *or other matters which may arise from day to day*" as potential bases for an employee's filing of a grievance—language so broad as to potentially encompass any work-related issue at NextEra's plant. The 2010-2013 Blue Book also stated that arbitration may

12

be sought when a matter was not satisfactorily resolved through other steps in the grievance process and involved compliance with the terms and conditions of the Blue Book. Here, IBEW seeks arbitration regarding a matter that arose in the day-to-day life of two NextEra employees, namely the status of their unrestricted access privileges and overall employment. *See, generally, NextEra*, 762 F.3d 592. Thus, the 2010-2013 Blue Book facially allowed the IBEW to request arbitration to resolve these matters.

Nevertheless, a party may show that a dispute falls outside of a collective bargaining agreement's arbitration clause if it can provide "positive assurance" that the parties intended to exclude the dispute from arbitration. *AT&T Techs.,* 475 U.S. at 649. NextEra attempts to show that disputes over unrestricted access are not contemplated by the 2010-2013 Blue Book, and that this case is one about access, not discharge. Because IBEW wishes to have the arbitrator review the revocation of Walker's and Engelbrecht's unescorted site access, NextEra posits that this court cannot compel arbitration unless it finds that the arbitrator has the authority to review such decisions.

The Seventh Circuit rejected these offerings in its 2014 *NextEra* decision. Although the Court relied on different language in the White Book to come to its conclusion, the rationale underlying that decision remains the same as here. While the 2010-2013 Blue Book did not mention unescorted access decisions directly, "'exclusion of particular parties or issues from coverage by an agreement's arbitration provisions . . . *must be stated explicitly in the agreement.*'" 792 F.3d at 596 (quoting *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n, Local 1969*, 683 F.2d 242, 247 (7th Cir. 1982)). Because this subject was not delegated explicitly to management's purview in the 2010-2013 Blue Book,

13

it cannot be said that it is verboten to send it to arbitration. Thus, whether or not an arbitrator will find the unescorted-access issue arbitrable is irrelevant. *See id.*

The Seventh Circuit also rejected evidence similar to what NextEra advances here to provide "positive assurance" of an intent to exclude this type of grievance from arbitration. IBEW's failure to negotiate language into the 2010-2013 Blue Book covering the situation at hand does not constitute an explicit or implicit relinquishment of arbitration as a potential solution to it. *Id.* at 597. Furthermore, that the arbitrator in the Suntrup arbitration—a decision involving "different parties, a different collective bargaining agreement, and different facts," *id.*—decided that access decisions were not reviewable in 2006 has no binding effect here. "It is black letter law that arbitration awards are not entitled to the precedential effect accorded to judicial decisions." *Id.* The 2006 Suntrup Award provides, at best, arguments that parallel the arguments NextEra makes here. However, that is far from the kind of positive assurance of intent necessary to exclude this matter from arbitration. *AT&T Techs.,* 475 U.S. at 649. The same can be said for NextEra's internal review process for unescorted access decisions as part of its Access and Fitness Program. The existence of this program suggests NexEra's desire to retain control of unescorted access determinations but does nothing to provide assurance of a purposeful intent to exclude those determinations—particularly as they relate to an employee's discharge—from arbitration. *NextEra*, 762 F.3d at 597; *see AT&T Techs.*, 475 U.S. at 649.

Because NextEra cannot provide positive assurance through forceful evidence that the issues IBEW brought forward through the grievance process were intentionally excluded from arbitration in negotiating the 2010-2013 Blue Book, this court finds that NextEra is required to arbitrate the Walker and Engelbrecht grievances. Accordingly,

14

IT IS ORDERED that NextEra's motion for summary judgment (Doc. 28) is denied and IBEW's motion for summary judgment (Doc. 29) is granted.

Dated at Milwaukee, Wisconsin, this 30th day of November, 2016.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE